UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEAN MCKENZIE, | |
| Petitioner, | |
| v. | Civil Action No. 12-0201 (JLL) |
| OSCAR AVILES, et al., | **OPINION AND ORDER** |
| Respondents. | |

This matter comes before the Court upon Petitioner's filing of a § 2241 habeas corpus application, see Docket Entry No. 1, and Respondents' answer, see Docket Entry No. 5, to which Petitioner duly traversed, see Docket Entry No. 8.

The parties are not in dispute as to the following facts: (a) Petitioner, who is currently 55 years old, is a native and citizen of Jamaica, who arrived to the United States and obtained permanent resident status in 1968; (b) Petitioner had numerous convictions in the United States ensuing from drug trafficking and controlled substance offenses; (c) Petitioner's imprisonment based on the above said offenses had been served; and (d) Petitioner was held in the ICE custody since May 16, 2011, when she was arrested – about five years after her release from imprisonment associated with her criminal convictions – for the purposes of her currently ongoing immigration proceedings.[1]  See, generally, Docket Entries Nos. 1 and 5.  Upon Petitioner's arrest by the ICE and her Joseph hearing,[2] Petitioner was classified as an alien

---

[1] Stands for the United States Immigration and Customs Enforcement, which is "the principal investigative arm of the Department of Homeland Security." <<http://www.ice.gov/about/overview/>>.

[2] See In re Joseph, 22 I.&N. Dec. 799 (BIA 1999).

detainee held pursuant to 8 U.S.C. § 1226(c) ("Subsection C"). Petitioner's traverse indicated that her immigration judge ("IJ") "found, on December 14, 2011, that [Petitioner] was eligible to proceed with cancellation of removal, and scheduled a hearing for February 15, 2012. On February 7, [Petitioner was notified that said hearing, which was] scheduled for February 15, 2012, was canceled by the [IJ, subject to re-scheduling]." Docket Entry No. 8, at 1, n.1 and Docket Entry No. 1-1.

      Petitioner contends that, since she was not taken in the ICE custody immediately upon her release from confinement associated with her criminal convictions, she was improperly classified as a Subsection C detainee, and that her classification should have been made under 8 U.S.C. § 1226(a) ("Subsection A"), which would entitle Petitioner to a bond hearing. See Docket Entry No. 1, at 1-2 and 13. In alternative, Petitioner argues that, even if she was properly classified as a Subsection C detainee, she should still be entitled to a bond hearing due to the length of her confinement in the hands of the ICE. See id. at 2 and 13. In conjunction with these claims, Petitioner seeks this Court's order directing either her outright release or an order directing her IJ to hold a bond hearing. See id. at 13. Respondents maintain that Petitioner was duly classified as a Subsection C detainee, regardless of the period of release that took place between her confinement associated with her criminal convictions and her placement in the ICE custody, see, generally, Docket Entry No. 5; Respondents do not address Petitioner's alternative argument, i.e., that her confinement as a Subsection C detainee was so lengthy that, without a bond hearing, it would violate constitutional safeguards. See id.

      In light of the factual particularities and claims raised this matter, a brief summary of the governing legal regime appears warranted. The statutory authority to detain an alien depends on

the stage of the removal process. Section 1226 governs the pre-removal-period detention of an alien, while Section 1231(a)(2) mandates detention during the removal period (established in § 1231(a)(1)(B)) and is supplemented by Section 1231(a)(6) (which provides the Attorney General with discretionary authority to detain aliens beyond the removal period).[3] Subsection A of § 1226 operates as a default provision in the sense that it authorizes the arrest, detention and release of aliens pending a decision on whether the alien is to be removed from the United States, except as provided in Subsection C; a Subsection A alien is automatically entitled to a bond hearing before his/her IJ.[4] See 8 U.S.C. § 1226(a). Subsection C, which operates as an exception to the umbrella rule of Subsection A, mandates detention of specified criminal aliens during removal proceedings; that detention is not include the alien's right to a bond hearing before his/her IJ, that is, provided that such detention does not continue for an unduly prolonged period of time. See 8 U.S.C. § 1226(c); Diop v. ICE/Homeland Sec., 656 F. 3d at 232 (3d Cir. 2011) ("At a certain point, continued detention becomes unreasonable and the Executive Branch's implementation of § 1226(c) becomes unconstitutional unless the Government has

---

[3] "The aforesaid key distinction cannot be duly appreciated without a clarification of what the meaning of the term 'removal period' is, since this term is a legal term of art ensuing from the relevant statutory language. . . . This 'removal period' starts on the latest of the following: (a) the date when the order of removal becomes administratively final (that is, appeal to the Board of Immigration Appeals ('BIA') was either taken and ruled upon, or the time to appeal expired); or (b) if the removal order is judicially reviewed and, in addition, if a circuit court orders a stay of the removal, then it is the date of the court's final order as to that removal, or (c) if the alien is detained or confined (except under an immigration process), then it is the date when the alien is released from confinement." Hany El Sayed v. Holder, 2012 U.S. Dist. LEXIS 16808, at *5-6 (D.N.J. Feb. 9, 2012) (citing 8 U.S.C. § 1231(a)(1)(B), footnote omitted).

[4] Since Subsection A has a built-in right to a bond hearing, an IJ's failure to conduct such a hearing entitled the alien to seek mandamus relief from the circuit court having jurisdiction over the IJ.

justified its actions at a hearing"). The remedy in a habeas proceeding commenced by a Subsection C alien is an order directing a bond hearing rather than an outright release. See Diop, 656 F. 3d at 232 (speaking in terms of "a hearing inquiring into whether continued detention is consistent with the law's purposes of preventing flight and dangers to the community"); accord Tkochenko v. Sabol, 2011 U.S. Dist. LEXIS 42338 (M.D. Pa. Apr. 1, 2011) (same); Fernandez-Romero v. Sabol, 2009 U.S. Dist. LEXIS 121375 (M.D. Pa. Dec. 31, 2009) (same); Prince v. Mukasey, 593 F. Supp. 2d 727, 2008 U.S. Dist. LEXIS 107935 (M.D. Pa. 2008) (same).

The issue of whether an alien detainee – who was not taken in the ICE custody immediately upon his/her release from confinement associated with criminal conviction – should be classified as a Subsection C or a Subsection A detainee has been heavily litigated administratively and in federal courts; as of now, this controversy began to reach federal appellate forums. At the administrative level, the leading case is, seemingly, Matter of Rojas, 23 I.&N. Dec. 117 (BIA 2001).[5] There, an alien was detained by the ICE two days after release from confinement associated with criminal offenses. Being classified as a Subsection C alien, Rojas appealed to the BIA maintaining that the classification should have been made under Subsection A. Specifically, Rojas maintained that – because Subsection C states, in mandatory terms, that "[t]he Attorney General shall take into custody any alien [who qualifies as a Subsection C detainee,]" and the statute's resort to the word "shall" means that any alien detainee who was not immediately taken in the ICE custody upon release from confinement associated

---

[5] According to Respondents, the seminal BIA case was Matter of Noble, 21 I. & N. Dec. 672 (BIA 1997). Substantively, the decision in Noble wass largely analogous to that in Rojas.

with criminal offenses – any alien who was not immediately taken in the ICE custody upon such release necessarily had to be classified as a Subsection A alien. See id.  Over a dissenting opinion (which relied on the literal meaning of Subsection C), the BIA rejected Rojas' position concluding that the language of Subsection C was best read as susceptible to alternative readings in light of the obvious goal of this statutory provision. See id. at 120.  The BIA stated that, although "[t]he statute does direct the Attorney General to take custody of aliens immediately upon their release from criminal confinement . . . Congress was not simply concerned with detaining and removing aliens coming directly out of criminal custody; it was concerned with detaining and removing *all* criminal aliens." Id. at 122 (emphasis in original).

The validity of BIA's conclusion in Rojas and its progeny has been widely litigated in district courts; the majority of these decisions aligned with the Rojas dissent, see, e.g., Christie v. Elwood, 2012 U.S. Dist. LEXIS 10662 (D.N.J. Jan. 30, 2012); Parfait v. Holder, 2011 U.S. Dist. LEXIS 117053 (D.N.J. Oct. 11, 2011); Keo v. Lucero, 2011 U.S. Dist. LEXIS 75619 (E.D. Va. July 13, 2011); Louisaire v. Muller, 758 F. Supp. 2d 229 (S.D.N.Y. 2010); Dang v. Lowe, 2010 U.S. Dist. LEXIS 50108 (M.D. Pa. May 20, 2010); Khodr v. Adduci, 697 F. Supp. 2d 774 (E.D. Mich. 2010); Scarlett v. DHS, 632 F. Supp. 2d 214, 219 (W.D.N.Y. 2009); Waffi v. Loiselle, 527 F. Supp. 2d 480, 488 (E.D. Va. 2007); accord Grant v. Zemski, 54 F. Supp. 2d 437 (E.D. Pa. 1999) (rejecting the BIA's position in Noble); Pastor-Camarena v. Smith, 977 F. Supp. 1415 (W.D. Wash. 1997) (same),[6] although some courts did find the BIA's position in Rojas

---

[6] Respondents correctly note that this Court found the majority's position persuasive. See Beckford v. Aviles, 2011 U.S. Dist. LEXIS 86629 (D.N.J. Aug. 9, 2011); Sylvain v. Holder, 2011 U.S. Dist. LEXIS 695917 (D.N.J. June 28, 2011); Burns v. Cicchi, 702 F. Supp. 2d 281 (D.N.J. 2010).

warranted.  See, e.g., Cave v. Decker, Civ. Action No. 11-1389 (SHR) (M.D. Pa.), Docket Entry No. 12 (Jan. 4 2012); Desrosiers v. Hendricks, Civ. Action No. 11-4643 (FSH) (D.N.J.), Docket Entry No. 24 (Dec. 30, 2011); Miles v. Sabol, 11-1286 (ARK) (M.D. Pa.), Docket Entry No. 4 (July 28, 2011); Diaz v. Muller, 2011 U.S. Dist. LEXIS 85971  (D.N.J. Aug 4, 2011); Gomez v. Napolitano, 2011 U.S. Dist. LEXIS 58667 (S.D.N.Y. May 31, 2011); Sulayao v. Shanahan, 2009 U.S. Dist. LEXIS 86497 (S.D. N.Y. Sept. 15, 2009).  At the circuit court level, this issue has been, thus far, addressed and resolved only by the United States Court of Appeals for the First Circuit, which agreed with the majority of district courts and the Rojas dissent.  See Saysana v. Gillen, 590 F. 3d 7 (1st Cir. 2009) (finding that the aliens not taken in ICE custody immediate upon their release from confinement underlying criminal convictions should be deemed Subsection A aliens).  The Supreme Court of the United States has not addressed this issue and, as of now, the Court of Appeals for the Third Circuit has a number of such appellate challenges pending.  See, e.g., Desrosiers v. Hendricks, U.S.C.A. Index No. 12-1053 (challenging denial of writ by Hon. Faith S. Hochberg); Sylvain v. Att'y Gen., U.S.C.A. Index No. 11-3357 (challenging grant of writ issued by Hon. Joel A. Pisano).

Since the remedy of cancellation of removal is available to permanent residents like Petitioner, see 8 U.S.C. § 1229b(a), it is plausible that Petitioner's upcoming proceedings before her IJ would produce such remedy and, in addition, result in the IJ's order directing her release. See, e,g., Nkemakolam v. Decker, 2005 U.S. Dist. LEXIS 27513, 2005 WL 2715905 (M.D. Pa. 2005) (habeas petition was dismissed as moot since petitioner was granted a cancellation of removal and released from ICE custody); Garcia v. United States Dep't of Homeland Sec., 657 F. Supp. 2d 403 (W.D.N.Y. 2009) (same).  However, it is equally plausible that Petitioner's

6

application for cancellation of removal proceedings could be denied (or, in alternative, if cancellation of removal is granted, the ICE might appeal that grant to the BIA, see, e.g., Hossain v. Sabol, 2010 U.S. Dist. LEXIS 8054 (M.D. Pa. Jan. 29, 2010); Victor v. Mukasey, 2008 U.S. Dist. LEXIS 96187 (M.D. Pa. Nov. 25, 2008)), and Petitioner might still remain in custody.

At the instant juncture, Petitioner's claims are not moot. See Diop, 656 F.3. at 226 ("Mootness has been described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)") (quoting Arizonans for Official English v. Arizona, 520 U.S. 43, 68 n.22 (1997)).  However, the Petition invites this Court to enter into a race against the hearing to be held, seemingly imminently, by her IJ.  Indeed, in the event the IJ grants her cancellation of removal and orders her release, be it on bond, supervision, her own recognizance or otherwise, such determination would necessarily render her claims moot.[7]

This Court, having no crystal ball, is not in the position to guess when Petitioner's cancellation of removal hearing would take place and whether she would be ordered released.  If

---

[7] In evaluating mootness, the courts must pay particular attention to circumstances in which the alleged wrongdoing recurs over a period of time.  In particular, the Supreme Court has determined that a case is not moot if the conduct complained of is "capable of repetition, yet evading review." Honig v. Doe, 484 U.S. 305, 318-20 (1988).  For conduct to be "capable of repetition, yet evading review," there must be a "reasonable expectation" or a "demonstrated probability" that the same controversy will recur. See id. at 318 n.6 (citation omitted).  "This exception applies when (1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again." Diop, 656 F.3d at 227 (quoting Turner, 131 S. Ct. 2507, 2514 (2011), quoting, in turn, Weinstein v. Bradford, 423 U.S. 147, 149 (1975)).  Here, in the event Petitioner is granted cancellation of removal and ordered released, her claims are likely to be rendered wholly moot since, even if the BIA were to reverse the IJ's decision and order her removed, Petitioner would become an alien detainee held under Section 1231, and her Saysana and Diop challenges would be vitiated.

the Court were to find that Petitioner is entitled to a bond hearing before her IJ (upon determining that she should have been classified as a Subsection A detainee or as a Subsection C detainee held in ICE custody for an unduly lengthy period within the meaning of Diop) and to direct Respondents to arrange for a bond hearing for Petitioner within a reasonable period of time,[8] such hearing might very well be put on the IJ's calendar *after* Petitioner's upcoming cancellation of removal hearing, thus rendering this Court's remedy superfluous in the event Petitioner is ordered released by her IJ. Simply put, in such scenario, the only meaningful relief Petitioner could obtain would be an order directing a "speedier" cancellation of removal hearing. However, this Court's habeas mandate does not provide it with a right to prioritize cases within an immigration court's docket. Only if this Court learns that Petitioner's cancellation of removal hearing is not imminent (or if the issue of Petitioner's release on bond would fall outside the scope of such hearing) the Court has basis to proceed with Petitioner's challenges at this juncture.

**IT IS**, therefore, on this 16th day of March, 2012,

**ORDERED** that the instant proceeding is stayed for a period not exceeding four weeks from the date of entry of this Memorandum Opinion and Order; and it is further

**ORDERED** that, within one week from the date of entry of this Memorandum Opinion and Order, Respondents shall file a supplement to their answer detailing to this Court: (a) the date of Petitioner's upcoming cancellation of removal proceeding, if such is known at the time; and (b) whether Respondents are considering raising to Petitioner's immigration judge the issue

---

[8] Unlike the Court of Appeals, this Court has no appellate jurisdiction over Petitioner's IJ or in personam jurisdiction over the IJ, since the IJ is not a party to this action. Therefore, any habeas writ this Court could issue would have a binding effect only on the parties to this suit.

of her release on bond in the event she is granted cancellation of removal, regardless of whether Respondents would consider appealing the immigration judge's determination; and it is further

**ORDERED** that, in the event Respondents inform this Court of their intention to raise to Petitioner's immigration judge the issue of her release on bond in the event she is granted cancellation of removal, Respondents shall keep updating this Court, on weekly basis, of the date of Petitioner's upcoming cancellation of removal hearing; and it is further

**ORDERED** that, in the event Petitioner's cancellation of removal challenges are resolved within four weeks from the date of entry of this Memorandum Opinion and Order, Respondents shall file a supplement to their answer advising this Court as to the outcome of that hearing, including the aspect of Petitioner's release on bond, be such release granted or denied.  Such supplement to Respondents' answer shall be filed no later than within one week from the date of the entry of Petitioner's immigration judge's decision; and it is further

**ORDERED** that no statement made in this Memorandum Opinion and Order shall be construed as indicating this Court's withdrawal of jurisdiction over this matter; and it is further

**ORDERED** that the stay provided for in this Memorandum Opinion and Order shall be deemed automatically lifted within four weeks from the date of entry of this Memorandum Opinion and Order, unless this Court orders otherwise; and it is finally

**ORDERED** that the Clerk shall serve this Memorandum Opinion and Order upon the parties by means of electronic delivery.

                                                          s/ Jose L. Linares
                                                          Jose L. Linares
                                                          United States District Judge